May it please the court my name is Daniel Drake I'm an attorney from Phoenix Arizona representing Nadunt Chibeast. I'd like to reserve about three minutes for rebuttal. I also want to advise Judge Graber that I have hearing aids and sometimes it's difficult for me to pick up comments so please bear with me on that if that if that should happen. This is a case where the district court denied a motion for new trial dealing with issues of whether the defendant had received discovery from the government prior to trial. The district court denied the motion without an evidentiary hearing and it made a couple of different findings that I want to call the court's attention. One of the first was that the district court suggested that the government was not responsible for the failure to deliver any of the discovery. What had happened was this was a pro se defendant he was in custody at a detention facility and the government delivered to the marshal's office or service a series of boxes destined for the defendant. They were then delivered to the institution. How they got handled precisely by the marshal service and to some extent what happened at the institution was not really clear. Mr. Chibeast filed a pleading where he said he thought he had reviewed a bunch of he learned that he had nine boxes of discovery not six that he thought he'd originally had and he said he found things in the additional three boxes that were helpful to him and could have been used in the trial in his defense. His defense in essence was mistaken identity or identity theft. He did not deny that he knew the defendants in the criminal conspiracy only two of whom went to trial out of about nine I believe and he had a legitimate relationship with them. He had lived at one of their houses for a period of time but the surveillance agents and the government poll cam and things of that sort really hadn't caught much activity regarding him. There was one episode where it was alleged that he was present when drugs were transferred but testimony of surveillance agents was that somebody walked up to the car threw something into the car and the defendant then got out of the car and went someplace else. Well, Mr. Drake, I my my concern is with the record that is before us and as I understand it the issue that was before the district court was whether or not there were documents that were not delivered to him before trial that could have been exculpatory that we remanded and then this claim was raised. So the record before the district court included, as I understand it, the government's list of all of the documents that were in the boxes. Is that correct? That is correct. The government the government gave a list and it also I believe attached the discovery letters that were sort of letters of transmittal itemizing what was disclosed. Right. And what did the what what was the response to that? Was there an allegation of that there were that that was incorrect or what? Mr. Mr. Chibby's allegation was that he he did not get documents that were pertinent to his case as part of the batch of discovery that was alleged to be the first batch. What's the discovery that that should have shown something that was exculpatory? Your strongest case on that, that surely must be some document that yes, there were a number of bank deposit slips from Virginia that tended to show that well, they showed that other people had deposited money into Mr. Chibby's account. In addition, Mr. Chibby's credit card identification documents and a script that an individual pass a background check as to Mr. Chibby's identity were found in the room of Oscar Ortiz, Jr., one of the co-conspirators who was not present at trial. So under those circumstances, he was going to argue, these people had my information, they had all this stuff that they could use against me, and look, these helped show that I was not there. Well, but I no, correct me if I'm mistaken, but I thought the district court said that those documents were in the boxes that were sent to him originally, so they weren't newly discovered evidence. Is that correct? That's what the district court said. Now, what is wrong with that finding? Well, number one, all we have at this point is the representation of the United States to that effect in the pleading that they filed. There were no ---- Well, I thought that we just ---- I thought there was they supplied a list of documents that were sent. I believe what they gave instead, Your Honor, was the letters of transmittal and basically said that ---- And they didn't indicate what the documents were? No. They indicated the documents by number. That's my recollection. And the problem is, once everything gets to the institution, Mr. Chibby's doesn't have any control over it. He can't get the stuff to him other than as the institution chooses to deliver it to him. But what do you want us to do? I'd like to get it remanded for a hearing where Mr. Chibby's could explain and call witnesses to establish what he did or did not get. Have you reviewed these documents yourself to compare them to what was originally sent in the first six boxes? I'm in an unfortunate position on that, Your Honor. I'm a successor counsel to the fellow who had the appeal before. I picked up from him nine boxes of documents. I started to go through them, and I found documents that, according to the government, were going to be in the second shipment, the three boxes he didn't get. I found some of those documents in the first six boxes, and I found some of the documents that should have been in the first six boxes in the other three boxes. So I can't tell what the defendant has been through and rearranged, nor can I tell what the prior attorney did in his part. So it's a little awkward for me. How's a district judge going to sort through this at a hearing if you can't discover it yourself? Well, if the attorney could come in, for example, the attorney who had it, and he could explain what he did with those documents, whether he moved it around, we could get that from the defendant as well. The government could make clear what it produced and explain it in a more ---- You're talking about the attorney who was there on the ---- after our remand, when these allegations first were ---- Yes. Yeah. In other words, you had an attorney on the original appeal and the remand. Do you want to redo? You essentially want to redo what should have happened the first time. Yes. I'd like to go back, have a hearing, and we can ---- it wouldn't be a long hearing, but it would clarify things greatly. All right. I think we understand your position. You may reserve my time. You may reserve my time. Thank you. Thank you. May it please the Court. I'm Peter Kozinets from the U.S. Attorney's Office in Phoenix. To obtain the extraordinary remedy of the new trial, the defendant had the burden on remand of articulating and proving a specific theory of relief. And his theory was that somehow in the first wave of discovery that was printed and sent to him in his detention facility, those six boxes, that somehow there was a mix-up and some discovery that was subsequently produced to him was included in those first six boxes. The government showed and the district court found as a factual matter that that claim was wrong, that based on Mr. Chybist's contemporaneous admissions and the government's discovery, correspondence, and schedule, that that just could not have been the case. Mr. Chybist has the burden here of showing that that factual finding was clearly erroneous, and we submit he hasn't done so. Well, the argument, as I understand it, the argument that, as I understand it, would be a legitimate argument is that it wasn't a fair proceeding because he really didn't have a chance to say what the documents were that he was worried about. So I'd like to address that. On remand, in May of 2015, the district court held a fairly extensive status conference to discuss these issues and how they would proceed. Mr. Chybist was representative counsel throughout the remand proceedings. They were then afforded essentially seven months. They didn't file a supplemental brief until November 28, 2015. They had those seven months to take as much time as they needed to review the nine boxes, prepare whatever written submissions they felt necessary to substantiate their burden of proof. And, in fact, they filed a 12-page supplemental motion with exhibits. The government filed a response, 13 pages, with exhibits. There was a reply brief and a surreply brief. Nothing prevented the defendant from attaching any sworn declarations or affidavits if he felt that he wanted to do so, or from attaching any specific documents that he claimed were exculpatory in explaining how they were exculpatory. So there was lots of process afforded below, and it would really elevate form over substance to redo this whole proceeding. And there was no objection raised to the matter in which it was handled? Well, that's correct, Your Honor. So at the end, after all briefing was issued, the defense did submit a request for an oral argument, an evidentiary hearing, and the district court judge said, I want to review everything that has been submitted, and then I'll, you know, determine whether I can decide this on the papers. And then she went ahead and issued her order. I see. But the defendant didn't file an affidavit or declaration that these items in the briefs were exculpatory and weren't in the first six or anything like that? That's absolutely correct, Your Honor. So this isn't anything like the cases cited in the briefs where the court found some sort of abusive discretion for not holding an evidentiary hearing. In those cases, there was that kind of quantum of proof. There were declarations or affidavits from attorneys or in juror misconduct cases from other jurors that indicated reason to believe that misconduct had occurred. We never reached that threshold of proof here. Were all these boxes of, well, whatever they were, bank records, were they relative to the laundering charge or the drug charge or what? Well, that's a great question. So the bank records, these check deposit slips were, Mr. Chibe's claimed, relevant to claims involving the use of his bank accounts for money laundering activities. But all he said was that they would show that other people were depositing money into his accounts. And that's what the government argued at trial and showed at trial. Other people were. And the government's argument was that he had authorized that. And nothing in the documents he attached called that into question. There were multiple other sources of proof that the government introduced at trial to demonstrate Mr. Chibe's guilt. For instance, there was the transaction where he acted as a lookout at a shopping mall in Tempe, Arizona, and then he was observed by surveillance agents driving away with Mr. Ortiz, the leader of the conspiracy, driving in a very erratic manner, speeding up, slowing down, cutting across multiple lanes of traffic as if he were trying to detect some sort of detail. None of the — nothing that Mr. Chibe's has pointed to calls any of that into question. There was also testimony and evidence at trial about how he accepted title to certain vehicles from Mr. Ortiz in furtherance of the conspiracy. And he had a defense that he was just getting this in consideration for giving haircutting, barbering lessons to Mr. Ortiz and his son. But he fully presented that to the jury, and the jury rejected all of that and found him guilty. Again, there's nothing in these — in any of the briefing on remand that calls any of that into question. Is there any further questions? No. Thank you. No questions. Thank you. Thank you. The list of the disclosures made by the government are attachments to his motion Exhibits 1, 2, and 3, and they appear at 2 ER 92 through 102. They end with a number that is someplace like 2,300 or 20,300. The defendant attached to one of his motions, or referenced in his motion, transcripts that he said included numbers that were higher than that. So I suggest that there is a discrepancy between what the government says it produced and some of the numbers that were actually produced. Secondly, the — there was an affidavit that appears to be included in the documents, and the references to the matters outside the page range are 2 ER 140 and 141. With respect to the surveillance and the driving erratically, those were interpretations by the officers of actions that they saw and what they thought to be suspicious or criminal activity. There was nobody inside the car except Chybis and this other fellow. Chybis was driving, but we don't know what directions were given or what advice was given to him as he was told to drive. And if you've ever had somebody telling you how to drive a car when you're driving it, it could be fairly termed erratic. So, our point is that Mr. Chybis deserves that opportunity to present some evidence. Thank you. Thank you. The case just argued is submitted for decision.
judges: Siler, Schroeder, Graber